**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**PATRICK CHANEY, INDIVIDUALLY AND**                              **PLAINTIFF**
**BY AND THROUGH HIS NEXT FRIEND AND**
**NATURAL FATHER, PAT CHANEY**

**V.**                                                                             **CASE NO. 2:03CV214**

**COLUMBUS McKINNON CORP., et al**                                     **DEFENDANTS**

**MEMORANDUM OPINION**

This cause comes before the Court on two separate motions for summary judgment: the motion of defendant Mid-South Crane & Hoist Co., Inc. ("Mid-South") [173-1] and the motion of defendant Mock, Inc. ("Mock") [175-1]. While the two motions were filed separately, their arguments are virtually identical. The plaintiff has filed only one response to both motions, and both defendants have filed a joint reply. The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiff is Patrick Chaney, a 20-year-old resident of Tallahatchie County, Mississippi who brings this suit individually and by and through his next friend and father, Pat Chaney. Patrick has brought this suit alleging that the defendants are responsible for work-place injuries he suffered. The defendants include Columbus McKinnon Corp. ("Columbus McKinnon"), apparently a New York corporation; Lift Tech Internation, a Division of Columbus McKinnon Corp. ("Lift Tech"), apparently a Michigan corporation; Mock, Inc. d/b/a Hi-Speed Industrial Service ("Mock"), a Tennessee corporation; Mid-South Crane & Hoist Company, Inc. ("Mid-South"), a Tennessee Corporation; FKI Industries, Inc. d/b/a ACCO Chain & Lifting Products Division ("FKI/ACCO"), a foreign corporation whose principle place of business is in Pennsylvania; Cooper Tools, Inc. d/b/a

Campbell Alloy ("Cooper Tools"), a Pennsylvania corporation; and various fictitious defendants.

According to the Third Amended Complaint, Patrick was an employee of Watkins Equipment Company, Inc. ("Watkins") under the supervision of ACI Building Systems ("ACI"), a Batesville, Mississippi corporation and independent contractor which manufactures pre-engineered metal buildings and other steel structural supports. The main product of the plant in which Patrick worked was a type of modular building beam used in building bridges. In the factory, there was a main beam running the length of the building which is referred to as the "bridge." Attached to this bridge is a trolley which travels the length of the bridge. The trolley also has a beam set perpendicular to the bridge upon which a hoist is mounted. This mobile hoist is used to transport steel beams to different locations in the factory for different stages of the fabrication process. According to Patrick, the hoist used on the trolley at the time of the accident was manufactured and sold by "the Defendants" and it is of the model manufactured, sold and distributed by Columbus McKinnon and/or Lift Tech (which is described as a Columbus McKinnon subsidiary).

On April 1, 2002, Patrick was working at a welding table consisting of two beams which supported the beam on which the welder is working. Next to the table on the floor was another beam which was resting on the eight-inch flange on one side of the beam. This beam was sitting about four feet tall and weighed about 2000 lbs. Attached to the hoist were two sets of hooks allegedly sold, distributed and marketed by Mock and/or Mid-South and manufactured by FKI/ACCO and/or Cooper. At the end of each chain was a plate hook for use in attaching to steel plates and other similar objects in order to manipulate them with the hoist. Patrick alleges that the plate hooks contained no protective or safety device to keep them from clamping or lifting objects unintentionally. Likewise, neither the crane hoist, the crane control device, chain or hooks contained

any warning or instruction on proper use.

On the day of the accident, Patrick was attempting to move the hoist/plate hook assembly away from his work station when the plate hook attached to the steel beam and pulled it over onto his right leg, crushing it. Patrick was later forced to have his right leg amputated just below the knee. Patrick's employer, Watkins Equipment, paid Patrick's Workers' Compensation claim. Patrick now seeks damages against the defendants under a products liability theory. His complaint raises claims of (1) product liability: strict liability/negligence/failure to warn; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose, (4) negligence; and (5) breach of warranty of good and workmanlike performance. Patrick seeks compensatory damages in the amount of $2 million and punitive damages in excess of $3 million.

In an order dated March 1, 2006, the Court granted the motion of Columbus McKinnon for summary judgment. The Court now turns to the motions of Mid-South and Mock.

## **ANALYSIS**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court

must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 120 S.Ct. at 2110.

Claims for defective design and failure to warn are governed under Miss. Code Ann § 11-1-63, which states in relevant part:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> > (i) 2. The product was defective because it failed to contain adequate warnings or instructions, or
> >
> > 3. The product was designed in a defective manner, or
>
> (b) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.
>
> (c) (i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.
>
> > (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into

>     account the characteristics of, and the ordinary knowledge common
>     to, a physician or other licensed professional who prescribes the drug,
>     device or other product.
>
> (d) In any action alleging that a product is defective pursuant to paragraph (a) of this section, the manufacturer or seller shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition.
>
> (e) In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.
>
> (f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
>> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
>>
>> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63.

I.    MID-SOUTH'S MOTION

Mid-South's motion for summary judgment is premised on the argument that Chaney cannot prove that Mid-South sold the plate hooks which were involved in Chaney's accident. Mid-South

relies upon undisputed evidence that Mid-South's last sale of any such similar apparatus to ACI was in November, 1996. It is further undisputed that several of the components of the chain and plate hooks bore stamps indicating that they were forged in 1999. Consequently, Mid-South argues that it cannot have been responsible for any alleged defect in the chains and/or plate hooks which led to Chaney's accident, since the chains and plate hooks in operation at the time could not have been those supplied by Mid-South. In response, Chaney specifically disclaims any defect claims for the chains but argues that Mid-South was liable for any defects in the hoist and the plate hooks, both of which Mid-South sold.

The hoist was manufactured by Columbus McKinnon, and the Court has already granted Columbus McKinnon's motion for summary judgment based on the undisputed fact that the hoist functioned as Chaney expected it to and that the product defect, if any sprang from the plate hooks. Accordingly, to the extent that the complaint raises products liability claims against Mid-South as seller of the hoist, the motion for summary judgment is GRANTED.

The plate hooks were manufactured by Cooper Tools, and Mid-South's liability for any defect in them must stem from Mid-South's role as seller. While it does appear from the record that at least some of the components of the chain assembly most likely were sold by some party other than Mid-South, the Court finds that there is presently too much confusion surrounding the design of the chain assembly and the plate hooks to say definitively that no component sold by Mid-South could have played a role in Chaney's injuries, at least for summary judgment purposes. Accordingly, Mid-South's motion for summary judgment is DENIED.

II.     MOCK'S MOTION FOR SUMMARY JUDGMENT.

In addition to reiterating the arguments raised by Mid-South, Mock offers additional grounds

for summary judgment – specifically, that Mock had no connection to the equipment which led to Chaney's injuries at all until late 2001 when Mock purchased all the shares in Mid-South owned by its sole stockholder. Chaney concedes that Mock was not responsible for selling any of the products which were allegedly defective. Instead, Chaney's sole theory of recovery against Mock is that it is liable under the theory of successor corporate liability for the products sold by Mid-South, which Chaney characterizes as Mock's predecessor corporation. In support of this theory, Chaney relies chiefly on <u>Huff v. Shopsmith, Inc.</u>:

> The general rule has been that a corporation which acquires all of the assets, but no stock, of another corporation does not also acquire the debts and liabilities of the original. However, under the product line theory, successor corporations which undertake the manufacture of the same products as the predecessor are liable for injuries caused by defects in that product and inherit the liabilities associated with the product even if sold and manufactured by the predecessor corporation. Under the product line theory, manufacturers (both predecessor and successor corporations) are in a better position to insure against defective products, and the compensation of innocent victims is spread throughout society.

786 So.2d 383, 387 (Miss. 2001)(citations omitted).

In order to establish liability under this theory, the plaintiff must demonstrate four elements: (1) the successor must produce the same product under a similar name, (2) the successor must have acquired substantially all of the predecessor's assets leaving no more than a corporate shell, (3) the successor must hold itself out to the public as a mere continuation of the predecessor, and (4) the successor benefits from the good will of the predecessor. <u>Huff</u>, 786 So.2d at 387. Chaney has come forward with no evidence in support of any of these four elements. More importantly, as Mock notes, Chaney has come forward with no precedent applying the product line theory of successor liability to situations in which one seller purchases another and a plaintiff seeks to hold the purchaser liable for products previously sold by the purchased seller. The plain language of <u>Huff</u> as outlined

by the plaintiff himself appears to limit the Mississippi Supreme Court's formulation of product line successor liability to manufacturers bought out by other parties. The Court perceives no reason to extend this theory to sellers. Accordingly, Mock's motion for summary judgment is GRANTED.

## **CONCLUSION**

Based on the foregoing analysis, it is hereby ORDERED:

1. that Mid-South's motion for summary judgment [173-1] is DENIED with regard to any claims of liability over the allegedly defective plate hooks but is otherwise GRANTED, and

2. that Mock's motion for summary judgment [175-1] is GRANTED.

A separate order to that effect shall issue this day.

This is the 15th day of March, 2006.

    /s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**